DREW, Justice. .
J. H. Brock died testate leaving surviving him his widow, Ella Sims Brock, six children of a former marriage and the wife and children of a deceased child of a former marriage. Among the property left by deceased was the sum of approximately $28,000 in cash and three U. S. Government Savings Bonds having a maturity value of $2,500 registered in the name of deceased and payable on his death to his widow, Ella Sims Brock. This controversy centers around these two items of personal property.
The widow and children met at the home of deceased shortly after his death and divided the cash among themselves, each taking one-eighth. The bonds in question were retained by the widow, along wtih other items of personal property not involved in this appeal.
The widow filed her election to take dower and shortly thereafter the executor of the estate filed in said cause a petition requesting the County Judge to determine the ownership and value of certain items of personal property and whether the widow should be forced to account to him for the same and for certain relief concerning a claim by the widow and the widow’s “right of dower as well as the admeasurement thereof.” In her reply — as far at it relates to the issues involved here —the widow expressly denied that the value of the bonds “should be considered as a part or portion of the estate of J. H. Brock for distributive purposes under the several provisions of the Florida Probate Law of 1933, as amended and claims same as her sole property.” As to the $28,000 in cash,, she alleged:
“Further answering the petition filed in this cause, Ella Sims Brock, by her undersigned attorney, says: That immediately upon the death of her husband, J. H. Brock, respondent and the heirs mentioned in the petition filed in this cause, divided in equal shares the approximate sum of twenty eight thousand dollars ($28,000.00) in United States currency left in the actual custody and possession of respondent 'by the said J. H. Brock; that said amount has not been included in the total computation of the assets of the estate.”
In an amended petition filed later the widow further alleged:
“III. That the said J. H. Brock died owning $28,000.00 in lawful money of the United States of America, which sum of money has not been included in the assets of the estate of J. H. Brock by inventory or otherwise; that said sum of money was owned by the said J. H. Brock and was in his possession-in his home at the time of his death.
. “IV. That petitioner, having filed her election to take dower in the manner prescribed by law, is entitled to her dower interest in the $28,000.00 which the said J. H. Brock owned at the time of his death.”
The prayer in the petition was for a determination of her right of dower in the *512 $28,000 and that the court assign said dower interest in said sum.
The children of the deceased, in their answer alleged, inter alia, that “prior to his death, J. H. Brock made a gift of the money referred to in said petition to his widow and heirs, that said money did not belong to the deceased at the time of his death and does not now constitute any part of his estate.” ■ They also alleged, in an additional answer:
“Said Ella Brock, the widow of the deceased, soon after the death of the deceased, divided or participated in the division of, the money referred to in said petition among herself and the heirs at law of the deceased, and thereafter, when the attorney for the executor was endeavoring to ascertain from her, the said widow, what the assets of the estate consisted of, wilfully and designedly failed and refused to advise said attorney of said money, when she had ample opportunity and it was her duty to so advise him. As a' consequence thereof, said money was not shown on the inventory as an asset of the estate, and the said Ella Brock is now estopped from claiming that said money is an asset of the estate.”
Extensive hearings were held before the Honorable E. C. Welch, Circuit Judge, acting for and on behalf of the County Judge of Washington County, disqualified. The court heard all the witnesses and had the advantage of seeing them testify and of observing their demeanor and attitude on the stand. The evidence on the matters before him was conflicting; many of the witnesses —in fact most of them — had a direct interest in the outcome of the litigation. The trial court disposed of the matter by final judgment in which he held, among other things, that the widow was entitled to dower in the $28,000, which had been theretofore divided- among the widow and the heirs. The court also held “that the United States Savings Bonds * * * form- a part of the estate of J. H. Brock, deceased only for the purpose of admeasurement of the widow’s dower * * (Emphasis supplied).
An appeal was taken by the heirs (appellants here) to the Circuit Court from that part of the final judgment holding that the widow was entitled to dower in the $28,000. The widow filed cross assignments of error to that part of the final judgment relating to the Savings Bonds. The Circuit Court affirmed the. judgment in its entirety.
An appeal was taken to this Court from the Circuit Court’s order of affirmance by appellants. The error assigned was the same as that assigned in the appeal to the Circuit Court viz., that the Circuit Court erred in affirming that -part of the final judgment holding that the widow was entitled to dower in the $28,000. -Cross assignments were filed by appellee widow, in which she insists the Circuit Court erred in affirming that portion of the final judgment relating to the Savings Bonds.
Whether the deceased actually made a bona fide inter vivos gift of the $28,000 to his widow and his children prior to his death was a factual matter to be determined from the evidence. The trial court was in a particularly advantageous position to weigh the evidence in this respect. His findings were affirmed by the Circuit Court and our analysis thereof brings us to the inescapable conclusion that there is ample — in fact abundant — credible evidence to support these findings. Under such circumstances we hereby affirm the judgment of the lower court in this respect and affirm his-judgment holding that such sum of money was an asset of the estate of J. B. Brock and that the widow was entitled to the dower therein.
The United States Savings Bonds involved in this litigation were worded exactly as and are the same type of bonds which were involved in the case of In re Briley Estate, 155 Fla. 798, 21 So.2d 595, 598. In that case this Court very exhaustively dealt with the question of whether -bonds of this character became the property of the survivor or became a part of the deceased’s estate to be administered under the laws of Florida for the distribution of intestate estates. We reached the conclusion that such bonds constituted a contract between the United States and *513 the deceased for the benefit of the survivor; that such contract was controlled by Federal law and that it may be enforced by the survivor irrespective of the laws of Florida governing-the distribution of estates. We further said in that case “that on the death of the registered owner, a Savings Bond [of the type under discussion] becomes the property of the surviving designated beneficiary.”
In the instant case the trial court held that these bonds constituted a part of the estate of the deceased for the purpose of admeasurement of dower, and the Circuit Court affirmed thát judgment. Whether this conclusion is correct is purely a question of law, all facts being undisputed.
The executor and heirs contend that these bonds were part of the personal property of the deceased at the time of his death and that under Section 731.34,' F.S.A., the widow is entitled to only one-third of the property owned by her husband at the time of his death. They say that under our holdings in In re Briley Estate, supra, the Federal Government may determine that these bonds pass to the survivor on the death of the registered owner but that the Federal Government does not undertake to declare ihat the bonds are not a part of the personal p toperty owned by the decedent at the time of his death. They say it is the State law which measures dower and decides how much and what the dower shall consist of. In short, they say that the widow’s dower is the same whether the distribution of the bonds is under Federal law or State law. They sum up their argument by saying: :
“ * * * * If the decedent had owned county, bonds instead of U. S. Bonds; of the same value, and had bequeathed the county bonds to his widow and had made no other request of personal property in the will, the widow could not take the county bonds, under the will and one-third of all the remaining personal property as dower. In this case she cannot take the U. S. Bonds under a provision in the bonds which is equivalent to a will and then claim one-third of the remaining personal property as dower.”
The argument alluded to is persuasive and the' question we deal with is not easily answered. When we consider,, however, our holding in In re Briley Estate, supra, that upon the death of the registered owner the'bonds become the property of -the survivor, we'fail to see how these bonds could become the property of the estate for' any purpose. In the example d'ráwn and quoted above concerning county bonds, such.bonds would, have definitely been a part of .the estate, subject to. the payment of debts and proper, charges, whereas, the Savings Bonds, under our previous holdings, would not have, been subject to such debts- or charges. •
The formula adopted by the trial court, would prove unreasonably absurd if applied to a case where, for .example, the/bonds amounted to six or seven times.the yalue of the remaining estate. Under such..circumstances, to require the survivor wife to add the value of such bonds to the remaining assets of the estate — bonds-which’we have held she . towns absolutely — and then take one-third of the whole as dower would effectively prohibit the wife from receiving that which has been so carefully preserved to her in our laws.- Such a formulae would,, in such case,'produce- a reductio- ad absurdum. ■ -
We therefore hold that the Savings Bonds of $2,500, on the death of J. H. Brock, became the absolute property of the survivor- therein named, did not;become a part of the estate of the said J. H. Brock, and that the holding of the lower court to the contrary is hereby reversed.
The other- questions raised and argued have been examined by'us. We hold that the procedure adopted and followed for the determination of these questions-in the lower court were fully authorized by the applicable statutes. All parties' were bé-fore- the court, the matter was fully litigatéd and everybody affected' -had their day in court.
Affirmed in part and reversed in part.
-HOBSON, C.' J., and THOMAS and ROBERTS, JJ., concur.